IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| vs. | )   Criminal Action No. 14-00112-KD-C-1 |
| | ) |
| TOMMIE LEE WILLIAMS, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

This action is before the Court on Defendant Tommie Lee Williams' *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. 53), an inquiry letter from Williams (Doc. 57) and the United States' response (Doc. 56). Upon consideration, and for the reasons set forth herein, the motion is **DENIED**.

**I.   Background**

In May 2014, Tommie Lee Williams (Williams) was indicted for bank robbery in violation of 18 U.S.C. § 2113(a) (Count One). (Doc. 1). He pled guilty to that charge. (Doc. 20 (plea agreement); Doc. 23 (text only order on Guilty Plea)). Williams was sentenced on November 7, 2014. His total offense level was 29 with a criminal history category of VI; his Sentencing Guideline range was 151 to 188 months. (Doc. 31 at 15). The Court imposed a sentence below the advisory Guideline range as to Count One and sentenced Williams to 96 months to the custody of the Bureau of Prisons. (Doc. 36 at 2).

Williams is now 53 years old and is incarcerated at the Federal Correctional Institute, Talladega. His estimated release date is February 21, 2021.

Williams moves this Court for early release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) based on extraordinary and compelling reasons. Specifically, Williams asserts he is diabetic, he has

1

sarcoidosis and he is overweight, each of which places him at an increased risk for severe illness should he contract COVID-19. (Doc. 53 at 3-4). Williams explains that "[s]arcoidosis is a chronic disease which builds up and destroys the immune system." (Id.). Williams states he has been treated by numerous specialists for his condition, has been closely monitored because of the severity of his condition, and has spent time in the Intensive Care Unit for treatment of a sarcoidosis flare up. (Id. at 3).

Williams also alleges COVID-19 is running rampant[1] in the prison and that "the inmate population does not take the virus serious[ly]." (Id. at 4). According to Williams, because other inmates do not take COVID-19 seriously, the risk of COVID-19 being spread increases. (Id.). Moreover, Williams identifies that his estimated release date is in February of 2021, that he would live with his uncle if released, he has a plan to file for Federal and State Supplemental income "as [he] is unable to work, and that he will receive financial support from his family until he "can stand on [his] own two feet." (Id. at 5).

**II.     Exhaustion**

In relevant part, the compassionate release provision of 18 U.S.C. § 3582(c), as amended by the First Step Act of 2018, provides that:

> (A) the court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment" after considering the [applicable] factors set forth in 18 U.S.C. § 3553(a)…it finds that—
> (i)     extraordinary and compelling reasons which warrant such a reduction;

---

[1] At FCI Talladega, as of November 20, 2020, 79 inmates and 14 staff members were COVID-19 positive; 69 inmates and 8 staff members had recovered. One inmate has died. https://www.bop.gov/coronavirus/.

18 U.S.C. § 3582(c)(1)(A)(i); First Step Act of 2018, Pub. L. 115-391, § 603(b), 132 Stat. 5194, 5239.

Williams attached a copy of the Warden's denial of his request for administrative remedy to his motion for compassionate release. (Doc. 53 at 6). The Warden's denial indicates Williams' request was received April 15, 2020; the Warden's denial is dated June 19, 2020. (Id.).

The United States responds that this Court has jurisdiction over Williams' motion as 30 days have passed between the Warden receiving Williams' request for administrative remedy and his current motion. (Doc. 56 at 12-13). The Court must now address the applicable factors set out in 18 U.S.C. § 3553(a).

### III.  Motion for Compassionate Release

Once a sentence is imposed, the "authority of a district court to modify an imprisonment sentence is narrowly limited by statute." United States v. Phillips, 597 F.3d 1190, 1194-95 (11th Cir. 2010); United States v. Shaw, 711 Fed.Appx. 552, 554-55 (11th Cir. 2017) (same). Specifically, the district court may not modify a term of imprisonment once it has been imposed except as set out in 18 U.S.C. § 3582(c). See United States v. Pubien, 805 Fed.Appx. 727, 729 (11th Cir. 2020) (citing 18 U.S.C. § 3582(c)).

The compassionate release provision of 18 U.S.C. § 3582(c)(1)(A)(i) provides that the district court "may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the [applicable] factors set forth in 18 U.S.C. § 3553(a)," if the district court finds that "extraordinary and compelling reasons warrant such a reduction" and the reduction is "consistent with applicable policy statements issued by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

"Extraordinary and compelling" reasons are not defined in the statute. Instead, Congress gave the Sentencing Commission the duty to promulgate general policy statements regarding sentence modifications pursuant to 18 U.S.C. § 3582(c)(1)(A) and stated that the Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Congress also stated that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." Id.

Before the First Step Act was enacted, the Sentencing Commission promulgated the following policy statement:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
>    (1) (A) Extraordinary and compelling reasons warrant the reduction;
>    or . . .
>
>    (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
>    (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.[2]

The Application Notes to the Policy Statement include four examples of extraordinary and compelling reasons for consideration of a reduction in sentence under § 3582(c)(1)(A): (A)

---

[2] Subparagraph (B) provides for consideration of compassionate release if "[t]he defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned[.]" Since Williams is 53 years old, subparagraph (B) cannot apply to him.

Medical Conditions of the Defendant; (B) Age of the Defendant[3]; (C) Family Circumstances; and (D) Other Reasons. Williams argues his diabetes diagnosis, his sarcoidosis diagnosis and his weight/BMI make him more susceptible to contracting COVID-19, "which may have fatal consequences [for Williams] if he catches" COVID-19. (Doc. 53 at 2). Thus, his explanation may fall within either Application Note 1(A)(ii)(I) "Medical Conditions of the Defendant" or 1(D) "Other Reasons." To qualify for compassionate release under Subsection (A), Williams must demonstrate he is:

> (I) suffering from a serious physical or medical condition,…that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. §1B1.13 cmt. n. 1(A)(ii)(I).[4]

Specifically, Williams contends "sarcoidosis is a chronic disease which builds up and destroys the immune system by creating cells in the human organs and all other parts of the body, in the form of small clusters called granul[o]mas—a type of inflammation." (Doc. 53 at 3). Williams states his "condition has already attached to his Brain, Eyes, Kidneys, and his skin." (Id. at 1). Williams also notes that the Centers for Disease Control and Prevention (CDC) has said people who are immunocompromised and who take immune weakening medications are at an increased risk for severe illness from COVID-19. (Id. at 4).

---

[3] Subparagraph (B) requires the defendant be at least 65 years old. As noted *supra*, footnote 2, Williams is 53 years old so this subparagraph does not apply to him.

[4] Williams does not allege that he has a terminal illness, that he has serious functional or cognitive impairment, or that he is experiencing deteriorating physical or mental health because of the aging process. He does not allege that his family circumstances meet the criteria 1(A) or that he meets the age requirement in 1(B) (at least 65 years old). U.S.S.G. § 1B1.13, cmt. n. 1(A)(i) & (ii)(II)(III), (B) & (C).

Additionally, Williams alleges that "[o]n or about June 22, 2020 [he] was informed by Talladega Health Services that he is now a Diabetic." (Id. at 3). He also contends that he weighs 225 pounds at age 53 which qualifies him as "obese enough to be at risk." (Id. at 4).

The Government states it "has reviewed Williams' medical records and confirmed that he was diagnosed with type 2 diabetes and that he has a history of pulmonary sarcoidosis, a chronic lung condition." (Doc. 56 at 13).[5] Moreover, the Government agrees that "[d]uring the pandemic, Williams' medical conditions constitute extraordinary and compelling circumstances making him eligible for compassionate release consideration because they put him at increased risk for severe illness if he were to become infected with COVID-19." (Id.). And see *People with Certain Medical Conditions,* Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated November 2, 2020) (emphasis added) (noting individuals with type 2 diabetes and/or chronic lung disease are at higher risk).  However, neither Williams nor the Government address whether these conditions diminish his ability to provide self-care[6] while in prison.

---

[5] Williams does not provide medical documentation to show he suffers from these conditions. However, Williams' sarcoidosis diagnoses was known at the time of sentencing. (Doc. 31 at 13). And, as discussed *supra*, the Government reviewed Williams' medical records to confirm his type 2 Diabetes diagnoses and sarcoidosis condition. The Court cannot determine if Williams in fact has a BMI that places him in the obese category per the CDC Guidelines. *People with Certain Medical Conditions,* Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated November 2, 2020). However, the parties are in agreeance that Williams' diabetic and sarcoidosis conditions constitute extraordinary and compelling circumstances making him eligible for compassionate release consideration anyway.

[6] The Bureau of Prison's Program Statement No. 5050.50 addressing "Compassionate Release/Reduction in Sentence" Procedures for Implementation of 18 U.S.C. §§ 3582 and 42059g)" identifies a "Debilitated Medical Condition" and states that reduction in sentence "consideration may also be given to inmates who have an incurable, progressive illness or who have suffered a debilitating injury from which they will not recover. The BOP should consider a RIS if the inmate is: Completely disabled, meaning the inmate cannot carry on any self-care and is totally confined to a bed or chair; or Capable of only limited self-care and is confined to a bed or chair more than 50% of waking hours."

Though the Government concedes that Williams has shown extraordinary and compelling reasons as defined by statute due to his medical conditions, the Court may grant a reduction in sentence for early release only "after considering the [applicable] factors set forth 18 U.S.C. § 3553(a)." See 18 U.S.C. § 3582(c)(1)(A). In that regard, the Government asserts that the Court should deny Williams' motion because he remains a danger to the community as "Williams' criminal history and the facts of his most recent offense show." (Doc. 56 at 13). Williams states he is "not a danger to society and the circumstances warrant a speedy compassionate release." (Doc. 53 at 5). Williams also notes he has "maintained an infraction free record as [he] diligently worked at paying $4,000.00 of the restitution…" (Doc. 57 at 1).

The Court has considered the "nature and circumstances" of Williams' offense and finds that this factor does not weigh in favor of a sentence reduced to time served. 18 U.S.C. § 3553(a)(1). Williams by force, violence, and intimidation, took $13,000 from the Robertson Banking Company. (Doc. 31 at 3).

Williams' "history and characteristics" also do not weigh in favor of a sentence reduced to time served. On January 20 1987, Williams was found guilty of two unrelated charges of second-degree and third-degree theft of property. (Doc. 31 at 8). Williams was then found guilty of three different robberies; he was arrested for these offenses January 30, 1987. (Id. at 9). Williams was released to lifetime parole on February 19, 2013; he was charged with the instant offense approximately 15 months after. (Id.). And see (Doc. 1 (Indictment dated May 29, 2014)). Here, early release would not meet the need for the sentence imposed to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," or to adequately deter criminal conduct and "protect the public from further from the Defendant." 18 U.S.C. § 3553(a)(1); § 3553 (a)(2)(A), (B), & (C). Based on Williams' criminal history, the Court

can only conclude that he is likely to be a recidivist. Accordingly, Williams' motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) is **DENIED.**

IV. **CARES Act**

To the extent that Williams' motion could be construed as a motion pursuant to the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516, the motion is **DENIED**. See e.g., (Doc. 57 at 1 ("Thank you for your attention and any consideration you are willing to offer [and] allow me to a safe environment concerning the high risk illness)). Previously, under 18 U.S.C. § 3624(c)(2), the Bureau of Prisons had authority to "place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." Under the CARES Act, effective March 27, 2020, the BOP Director was permitted to lengthen the maximum amount of time a prisoner may be placed in home confinement, in certain circumstances and during a specified period of time after the declaration of national emergency due to COVID-19, if the Attorney General found that emergency conditions would materially affect the functioning of the BOP. CARES Act, Pub. L. 116-136, § 12003(b)(2).[7]

On April 3, 2020, Attorney General William Barr made this finding and gave the Director authority to exercise this discretion. The Director was directed to "immediately review all inmates who have COVID-19 risk factors, as established by the CDC, starting with the inmates incarcerated at FCI Oakdale, FCI Danbury, FCI Elkton, and similarly situated facilities where you determine that COVID-19 is materially affecting operations." Memorandum from Attorney

---

[7] "Home Confinement Authority. During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau, the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate." CARES Act, P.L. 116-136, § 12003(b)(2) (2020).

General William Barr to Director of Bureau of Prisons, *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* at 2 (April 3, 2020), https://www.justice.gov/file/1266661/download.

However, the CARES Act did not give the Court authority to direct the BOP to consider Williams for home confinement or authority to direct the BOP to place him in home confinement for the remainder of his sentence. Under 18 U.S.C. § 3621(b), the BOP "shall designate the place of the prisoner's confinement."

**V.     Conclusion**

For the reasons stated herein, Williams' motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. 516) is **DENIED.** To the extent Williams' motion could be construed as a motion pursuant to the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516, the motion is **DENIED.**

**DONE** and **ORDERED** this **20th** day of **November 2020**.

> s / Kristi K. DuBose
> **KRISTI K. DuBOSE**
> **CHIEF UNITED STATES DISTRICT JUDGE**